Filed 5/14/25; Certified for Publication 6/11/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CITIZENS FOR A BETTER EUREKA,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CITY OF EUREKA et al.,<br><br>    Defendants and Respondents;<br><br>WIYOT TRIBE,<br><br>    Real Party in Interest. | A170214<br><br>(Humboldt County<br>Super. Ct. No. CV2300712) |

Citizens for a Better Eureka (CBE) filed a petition for writ of mandate pursuant to the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.[1]; CEQA) challenging an action by the City of Eureka (the City) and the City of Eureka City Council (the City Council) (collectively, respondents) that authorized the reduction or removal of a City-owned parking lot for redevelopment into affordable housing based on a CEQA exemption.

---

[1] All further undesignated statutory references are to the Public Resources Code.

1

The specially appearing Wiyot Tribe (the Tribe), which was selected as the developer for the affordable housing redevelopment but was not named in the writ petition, moved to dismiss the petition on the basis that it was a necessary and indispensable party to the proceeding. The trial court granted the motion and dismissed the action.

On appeal, CBE avers the Tribe was neither a necessary nor indispensable party to the action and therefore dismissal was not warranted. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Unless otherwise noted, all dates refer to 2023.

*The April Resolution*

On April 4, the City Council held a public hearing on its plan to develop affordable housing on a City-owned public parking lot at the corner of 5th and D streets in downtown Eureka (the parking lot). After the hearing, the City Council adopted a resolution (the April resolution) entitled:

> "A RESOLUTION OF THE CITY COUNCIL OF THE CITY OF EUREKA FINDING THE PROJECT QUALIFIES FOR A CLASS 12 SURPLUS GOVERNMENT PROPERTY EXEMPTION FROM CEQA AND AUTHORIZING THE REDUCTION OR REMOVAL OF PUBLIC PARKING FROM THE PARKING LOT AT 5TH AND D STREETS (APN 001-103-003) TO FACILITATE AFFORDABLE HOUSING PROJECTS."

The resolution authorized "the reduction or removal of public parking at [the parking lot], to facilitate development of Affordable Housing Projects." It found that "[t]he reduction or removal of parking to allow the sale or lease of the property is exempt from CEQA pursuant to CEQA Guidelines[2]

---

[2] CEQA Guidelines, hereafter cited to as Guidelines, refers to a series of administrative regulations for the implementation of CEQA promulgated by the Secretary of the Natural Resources Agency, codified at title 14, division 6,

2

Section 15312 (Class 12) Surplus Government Property Sales." A staff report recommending approval of the April resolution stated that "[t]he decision to declare property surplus, and the subsequent lease or sale of surplus property[,] is a 'project' pursuant to [CEQA]" and set forth the City's basis for claiming an exemption under Guidelines section 15312.

That same day, the City Council authorized the release of a request for proposal (RFP) for affordable housing projects on the parking lot.

*CBE's Petition for Writ of Mandate*

On May 5, CBE filed the petition for writ of mandate and complaint for declaratory and injunctive relief (the petition) at issue in this case, pursuant to sections 21168 and 21168.5, challenging the adoption of the April resolution on the basis that it violated CEQA. The petition named the City, the City Council, and Does 1 to 10 as respondents.

In the petition, CBE alleged the April resolution unlawfully claimed a Class 12 CEQA exemption for "sales of surplus government property" (Guidelines, § 15312) by improperly " 'piecemealing' " the project and focusing on the sale of the parking lot without considering the future use of the land. Instead, the petition asserted, " 'the whole of [the] action' that has 'a potential for resulting' in a direct or reasonably foreseeable indirect physical change to the environment is not merely the surplus-sale [*sic*] of the lot, but the redevelopment of the lot into affordable housing." The petition sought alternative and peremptory writs of mandate that generally sought to "vacate and set aside" the redevelopment project, declaratory and injunctive relief, and an order requiring respondents to rescind their approval of the project.

---

chapter 3 of the California Code of Regulations. (Guidelines, § 15000; *Union of Medical Marijuana Patients, Inc. v. City of San Diego* (2019) 7 Cal.5th 1171, 1184 & fn. 2 (*Union*).)

*The July Resolution and Notice of Exemption*

On July 18, after a public hearing, the City Council adopted a resolution (the July resolution) selecting the Tribe as the "preferred proposer" in response to the RFP.[3]  The July resolution further authorized the city manager to enter into a Memorandum of Agreement with the Tribe to establish the Tribe's general tasks and the process for negotiating a future development agreement, which the City Council planned to vote upon at a later time.

The July resolution stated the affordable housing development was a "project" subject to CEQA, but claimed it was exempt under sections 21159.21 and 21159.23 and Guidelines sections 15192 and 15194 "because the project (1) meets the eligibility criteria for the affordable housing exemption, and (2) does not trigger the land use and environmental thresholds and exceptions for affordable housing and residential infill projects."  The July resolution did not in any way reference the Class 12 CEQA exemption for "sales of surplus government property" on which the April resolution relied.

The following day, July 19, the City publicly filed a CEQA Notice of Exemption (NOE) setting forth the bases for its finding that the parking lot redevelopment project met all applicable threshold and eligibility criteria to qualify for the Affordable Housing Exemption from CEQA.  The NOE identified the Tribe as the proposed developer of the project.

*December Actions*

In December, the City and the Tribe executed a Memorandum of Understanding (MOU) concerning the parties' responsibilities in implementing the affordable housing development.

---

[3] The Tribe was also selected to develop a separate lot not at issue in this case.

4

On the same day the MOU was fully executed, December 22, CBE filed a motion for preliminary injunction seeking to enjoin respondents from issuing any approvals necessary for the construction of the redevelopment. In its motion, CBE asserted that respondents had taken further actions since its May filing to redevelop the parking lot by awarding redevelopment rights to the Tribe in July and authorizing the city manager to enter into an agreement with the Tribe.

The December 22 motion for preliminary injunction was the first CBE filing since its May petition.

*The Tribe's Motion to Dismiss*

On February 9, 2024, the Tribe moved to dismiss CBE's petition on the bases that (1) the Tribe was a necessary party to the action as the "real party in interest" with development rights for the affordable housing on the parking lot; (2) it could not be joined due to its sovereign immunity; and (3) it was an indispensable party as a judgment in favor of CBE would prejudice the Tribe, that prejudice could not be reduced, judgment entered in its absence would not be adequate, and CBE had alternate remedies.

In support of its motion, the Tribe provided a declaration by its Tribal Administrator stating the Tribe had invested significant time and resources toward the planning and development of the affordable housing project, including executing contracts to acquire funding. The Tribe also provided its own 2023 resolution describing, in part, its creation of a trust "to restore balance to the Wiyot ancestral territory that has been disrupted by settler colonialism, and for the purposes of Wiyot land and culture conservation, protection, and acquisition; land stewardship; affordable, safe and healthy housing; and other property-related activities for the collective benefit of Wiyot Citizens." Respondents filed a statement of non-opposition.

5

CBE opposed the motion to dismiss on the basis that the Tribe is not a necessary and indispensable party pursuant to Code of Civil Procedure section 389. Its central argument was that the petition concerned respondents' compliance with procedures necessary to remove or reduce parking from the parking lot, *not* the award of development rights to the Tribe. Also, the petition predated the Tribe's agreements with the City for the development of affordable housing at the site of the parking lot.

CBE also argued that any prejudice by a judgment in the Tribe's absence was "speculative at best" as a decision in CBE's favor would be " 'felt' " by the Tribe, but would not necessarily result in the invalidation of the Tribe's development rights or the MOU. Further, a " 'public rights' " exception to traditional joinder rules should apply as any prejudice was outweighed by the public's interest in obtaining review of the April resolution that would be circumscribed if the Tribe were found to be an indispensable party. Finally, CBE did not dispute the Tribe's sovereign immunity but argued that issue was of no relevance as it was not a necessary and indispensable party.

In reply, the Tribe asserted no public interest concerns existed that would warrant departure from traditional joinder rules. It also argued it could not be joined to the action because the limitations period to challenge the NOE identifying the Tribe as the developer for the project had lapsed.

On March 11, 2024, the trial court held a hearing on the motion to dismiss, which was not transcribed. On March 18, 2024, the court entered a brief order granting the Tribe's motion and dismissing CBE's action without prejudice. CBE appealed.

6

CBE argues the trial court erred in dismissing the petition, asserting the Tribe is neither a necessary nor indispensable party to the action as it challenges only the April resolution and therefore does not implicate the Tribe.  We are not persuaded.

## I. General CEQA Principles

" 'CEQA was enacted to advance four related purposes: to (1) inform the government and public about a proposed activity's potential environmental impacts; (2) identify ways to reduce, or avoid, environmental damage; (3) prevent environmental damage by requiring project changes via alternatives or mitigation measures when feasible; and (4) disclose to the public the rationale for governmental approval of a project that may significantly impact the environment.' " (*Union*, *supra*, 7 Cal.5th at pp. 1184–1185.)  The law " 'prescribes how governmental decisions will be made when public entities, including the state itself, are charged with approving, funding—or themselves undertaking—a project with significant effects on the environment.' " (*Id.* at p. 1185.)

In implementing CEQA, a public agency charged with carrying out or approving such a project applies a three-tier process.  (*Union*, *supra*, 7 Cal.5th at p. 1185.)  The agency first determines whether the proposed activity is subject to CEQA at all.  (*Ibid.*; see § 21065; Guidelines, § 15378, subd. (a) [both defining "project"].)  If the answer is yes, the agency must then decide whether the project is exempt from the CEQA review process under the Guidelines or a statutory exemption.  (*Union*, at p. 1186.)  If the agency finds an exemption applies, it may proceed with the project but "it must issue a notice of exemption citing the evidence on which it relied in reaching that conclusion." (*Ibid.*)  However, if there is no applicable exemption, "the agency

7

must undertake environmental review of the activity, the third tier." (*Id.* at p. 1185.)

Sections 21167, 21168, and 21168.5 authorize judicial review of CEQA-related actions of public agencies. (*Friends of Sierra Madre v. City of Sierra Madre* (2001) 25 Cal.4th 165, 195.) And section 21167.6.5 requires a petitioner to name and serve "a real party in interest . . . [in] an action or proceeding brought pursuant to" those sections—including CBE's petition as it alleged a cause of action pursuant to sections 21168 and 21168.5. (§ 21167.6.5, subd. (a).)

Failure to join a real party in interest may be grounds for dismissal of the action if the trial court determines that party is indispensable. (*Save Berkeley's Neighborhoods v. Regents of University of California* (2021) 70 Cal.App.5th 705, 717 (*Save Berkeley*); Code Civ. Proc., § 389, subd. (b); cf. § 21167.6.5, subd. (d).) Contrary to CBE's assertion that a de novo standard of review applies, "[w]e review a trial court's order regarding whether to dismiss for failing to join an indispensable party for an abuse of discretion." (*Save Berkeley*, at p. 721.) For the reasons we explain, we find no abuse of discretion here.

## II. Redevelopment of the Lot Is the Central Issue in the Petition

As a threshold matter, we must settle the parties' dispute as to what action was challenged by CBE's petition. CBE avers the petition exclusively challenged the April resolution approving the reduction or removal of parking spaces on the parking lot and claiming a Class 12 CEQA exemption under Guidelines section 15312. It contends the petition does not concern the subsequent award of redevelopment rights to the Tribe in the July resolution and, as a result, the Tribe was not implicated in its action. The petition itself belies such a narrow interpretation of its scope.

8

"What the [petitioner] claims is the subject of its action is not the touchstone." (*Quantification Settlement Agreement Cases* (2011) 201 Cal.App.4th 758, 854.) Instead, we look to the substance of the petition itself and determine what "project" under CEQA it challenges. (See, e.g., *ibid*. [approving trial's court's determination that the project " 'indisputably challenge[d]' " in CEQA action was the subject of the action for purposes of section 21167.6.5, former subdivision (a)].)[4]

Under CEQA, a " '[p]roject' " is "the whole of an action" that is "undertaken, assisted, or authorized by a public agency that may have a significant effect on the environment." (Guidelines, § 15378, subd. (a); *Stockton Citizens for Sensible Planning v. City of Stockton* (2010) 48 Cal.4th 481, 512; see also § 21065.) The Guidelines further provide that " 'project' refers to *the activity* which is being approved and which may be subject to several discretionary approvals by governmental agencies," but "does not mean each separate governmental approval." (Guidelines, § 15378, subd. (c), italics added.) " 'This definition ensures that the action reviewed under CEQA is not the approval itself but the development or other activities that will result from the approval.' " (*Citizens for a Megaplex-Free Alameda v. City of Alameda* (2007) 149 Cal.App.4th 91, 106 (*Citizens*).)

Here, the petition clearly demonstrates that the action that CBE sought to challenge was not merely the approval of the April resolution

---

[4] We recognize the discussion of the subject of the action in *Quantification Settlement Agreement Cases*, *supra*, 201 Cal.App.4th at page 854, see also pages 850 to 855, was part of an analysis of who was a "recipient[] of an approval" under a prior version of section 21167.6.5 that no longer applies to determine who is a real party in interest, an issue we discuss under the current version of the statute in Section III, *post*. However, we find its discussion of what project is the subject of an action informative for the purpose of assessing CBE's claim as to the subject of its action.

authorizing the reduction of parking, but the redevelopment of the parking lot into affordable housing that will result from that approval.  (*Citizens*, *supra*, 149 Cal.App.4th at p. 106.)  Indeed, CBE repeatedly argued in its petition that the basis for its CEQA challenge was respondents' failure to consider the environmental impact of the *entire* redevelopment project, not just the removal of parking.  For example, CBE asserted respondents' "action, to exempt the surplus sale of the lot without considering the redevelopment of the lot, a future use that is expressly identified in the staff report, is classic 'piecemealing' in conflict with CEQA."  Similarly, CBE argued " 'the whole of [the] action' " at issue in the petition was "not merely the surplus-sale [*sic*] of the lot, but the redevelopment of the lot into affordable housing."  (See Guidelines, § 15378, subd. (a).)

Hence, the future redevelopment of the lot was not some ancillary activity unrelated to CBE's petition.  Rather, the redevelopment resulting from the April resolution served as the crux of CBE's CEQA challenge.  Though we need not, and do not, decide whether respondents' action was "classic 'piecemealing' in conflict with CEQA," we cannot avoid the conclusion that, by grounding its complaint on this charge, CBE's petition challenges more than the mere withdrawal of parking spaces.  Instead, we conclude the project the petition challenges includes, by CBE's own characterization, redevelopment of the parking lot into affordable housing.

## III.  CBE Had an Obligation to Add the Tribe as a Necessary Party

Having determined the redevelopment of the lot was the project that was the subject of CBE's petition, we turn to whether the Tribe was a necessary party to that petition.  CBE asserts the Tribe is not a necessary party as it is "irrelevant" to the relief requested by CBE and had "no interest to be protected in the case at hand."  We disagree.

## A. CEQA Requirement to Add Necessary Parties

Whether a party is a real party in interest and thus deemed a necessary party is a separate and preliminary inquiry from whether that party is indispensable.  (See *Save Berkeley*, *supra*, 70 Cal.App.5th at pp. 718–720.)  The latter question—indispensability—is only reached after a determination is made that a necessary party cannot be joined in an action.  (See *id.* at p. 721.)

As in any other civil action, a petitioner or plaintiff in a CEQA action has a duty to add necessary parties.  (See § 21167.6.5, subd. (a); Code Civ. Proc., § 389, subd. (a); *Save Berkeley*, *supra*, 70 Cal.App.5th at pp. 719, 721; see also *TG Oceanside, L.P. v. City of Oceanside* (2007) 156 Cal.App.4th 1355, 1365 [Code of Civil Procedure section 389, subdivision (a) "defines persons who should be joined in a lawsuit if possible, sometimes referred to as 'necessary' parties"].)

As amended in 2011, section 21167.6.5, subdivision (a) sets forth " 'a bright-line rule as to which persons must be named [and served] in the CEQA complaint,' " referred to as real parties in interest.  (*Save Berkeley*, *supra*, 70 Cal.App.5th at pp. 716, 719; § 21167.6.5, subd. (a); Assem. Bill No. 320 (2011–2012 Reg. Sess.) (Assem. Bill 320) Stats. 2011, ch. 570, §§ 1, 3.)  "Those entities deemed real parties in interest under section 21167.6.5[, subd. ](a) are considered necessary parties for purposes of Code of Civil Procedure section 389." (*Save Berkeley*, at p. 721.)

The purpose of Assembly Bill 320 was to provide clarity as to who must be named as a real party in interest.  (*Save Berkeley*, *supra*, 70 Cal.App.5th at p. 716, quoting Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill 320, as amended June 14, 2011, p. 1.)  According to an Assembly Floor Analysis, the bill was specifically designed to ensure that all

11

necessary parties are properly joined so that a plaintiff's case may be fully adjudicated in one proceeding.  (Assem. Floor Analyses, 3d reading analysis of Assem. Bill 320, as introduced April 12, 2011, p. 2.)

As relevant here, section 21167.6.5 provides that, for an action or proceeding brought under section 21167, 21168, or 21168.5—like CBE's petition—"[t]he petitioner or plaintiff shall name, as a real party in interest, the person or persons identified by the public agency in its notice [of exemption] . . . or, if no notice is filed, the person or persons" who undertake a project supported through contracts with a public agency or who are issued a lease, permit, license, certificate, or other entitlement for use by an agency in relation to a CEQA project.[5]  (§ 21167.6.5, subd. (a); see §§ 21065, subds. (b), (c), 21108, subd. (b), 21152, subd. (b).)  In addition, the petitioner or plaintiff is required to serve the real party in interest with the petition or complaint within 20 business days of service on the public agency.  (§ 21167.6.5, subd. (a).)

---

[5] Specifically, the statute refers to "the person or persons identified by the public agency in its notice filed pursuant to subdivision (a) or (b) of Section 21108 or Section 21152 or, if no notice is filed, the person or persons in subdivision (b) or (c) of Section 21065, as reflected in the agency's record of proceedings for the project that is the subject of an action or proceeding." (§ 21167.6.5, subd. (a).)

Sections 21108 and 21152 concern agency approval or determination to carry out a CEQA project (or a project found to be exempt from CEQA) and the associated requirements to provide notices of determination or exemption related to those projects.  (§§ 21108, 21152.)  Section 21065, as previously noted, defines a CEQA project; it includes an activity undertaken by a person that is supported through contracts with a public agency, or an activity involving "the issuance to a person of a lease, permit, license, certificate, or other entitlement for use" by an agency.  (§ 21065, subds. (b), (c).)

**B. The Tribe Was a Real Party in Interest to CBE's Petition**

The Tribe was a real party in interest under section 21167.6.5 to CBE's petition challenging the redevelopment project, as the Tribe received development rights to that affordable housing project and was also identified in the NOE filed in July. (See § 21167.6.5, subd. (a).) As a result, the Tribe was a necessary party to the petition. (*Save Berkeley*, *supra*, 70 Cal.App.5th at p. 719; Code Civ. Proc., § 389, subd. (a).)

In arguing to the contrary, CBE reiterates its contention that the petition does not implicate the Tribe because it solely challenged the reduction of parking and associated CEQA compliance related to the April resolution, which was months before the Tribe was awarded development rights and identified in the NOE filed in July.

As previously discussed, such a narrow interpretation of the subject of CBE's petition is unsupported by CEQA's definition of "project" and the arguments raised *by CBE* in its petition. Instead, as we explained, CBE clearly argued and understood that the project at issue in its action was the entire redevelopment of the parking lot into affordable housing. (*Ante*, Section II.) As CBE plainly knew that the redevelopment of the lot would eventually and necessarily require a developer, we conclude CBE had a duty to add the Tribe, as a real party in interest, when the July NOE and award of development rights took place.

Our conclusion is supported by the plain language of section 21167.6.5, which envisions naming as additional parties to CEQA challenges those who are either identified in agency notices or who have contracts or other rights issued to them in relation to a project. (§ 21167.6.5, subd. (a); see §§ 21065, subds. (b), (c), 21108, 21152.) Moreover, the legislative history supports requiring a petitioner or plaintiff to name "all necessary parties . . . so a

plaintiff will only need 'one bite at the apple' to have his/her case judged on the merits." (See Assem. Floor Analyses, 3d reading analysis of Assem. Bill 320, as introduced April 12, 2011, p. 2.)

Further, as previously noted, the Guidelines recognize that a project may involve multiple approvals by an agency, but it defines the project as "the activity" that is approved rather than "each separate governmental approval" (Guidelines, § 15378, subd. (c)) as a way to " 'ensure[] that the action reviewed under CEQA is not the approval itself but *the development or other activities* that will result from the approval.' " (*Citizens*, *supra*, 149 Cal.App.4th at p. 106, italics added.)

If we accepted CBE's interpretation of section 21167.6.5, it would permit a petitioner to circumvent that statute's goal of joining all necessary parties in " 'one bite' " before proceeding to the merits of its action (Assem. Floor Analyses, 3d reading analysis of Assem. Bill 320, as introduced April 12, 2011, p. 2) by challenging a preliminary agency approval, even where the whole of the project being challenged is not merely the approval itself but the development or other activities resulting from that approval (see *Citizens*, *supra*, 149 Cal.App.4th at p. 106), which will necessarily involve a real party in interest named at a later time. We decline to endorse such a strained reading—at least where, as here, the petitioner explicitly relies on the "the redevelopment of the lot, a future use that is expressly identified" by the agency as the very basis for its CEQA challenge.

Therefore, we reject CBE's assertion that the Tribe is not a real party in interest and not a necessary party to the litigation. As a result, subject to the limitations discussed below, CBE had an obligation to join the Tribe in the action when it received development rights and was publicly named in

14

the NOE in July.  (See § 21167.6.5, subd. (a); Code Civ. Proc., § 389, subd. (a).)

## IV. The Tribe Cannot Be Joined Due to the Statute of Limitations

Respondents argue the statute of limitations bars joinder of the Tribe to the action.  We agree.[6]

Section 21167 contains strict time limits under which a project may be challenged under CEQA.  (*Guerrero v. City of Los Angeles* (2024) 98 Cal.App.5th 1087, 1102 (*Guerrero*); § 21167.)  When an agency determines a project is exempt from CEQA and files a NOE (as occurred in the case before us), any lawsuit challenging that exemption determination must be filed within 35 days from the date of the NOE.  (§ 21167, subd. (d); *Guerrero*, at p. 1099.)  If no NOE is filed, a petitioner has 180 days from project approval—the longest limitations period applicable to CEQA claims—to file a lawsuit.  (§ 21167, subds. (a), (d); *Guerrero*, at pp. 1099, 1102.)

In addition, "[t]he petitioner or plaintiff shall name, as a real party in interest, the person or persons identified by the public agency in its notice" and "shall serve the petition or complaint on that real party in interest, by personal service, mail, facsimile, or any other method permitted by law, not later than 20 business days following service of the petition or complaint on the public agency."  (§ 21167.6.5, subd. (a); see *Save Berkeley*, *supra*, 70

---

[6] The Tribe raised the statute of limitations issue to the trial court for the first time in its reply to CBE's opposition to the motion to dismiss. Nevertheless, as it was raised below, and as the parties have briefed the issue on appeal, we exercise our discretion to reach it, even assuming, *arguendo*, it was not properly preserved for appeal.  (See *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 ["An appellate court is generally not prohibited from reaching a question that has not been preserved for review by a party. . . .   Whether or not it should do so is entrusted to its discretion."].)

Cal.App.5th at p. 726 [CEQA petitioner's failure to name and serve real parties in interest within 20-business-day limitations period was grounds for dismissing real parties in interest from the action even though petition was filed within section 21167's limitations period].)

Here, CBE timely filed its petition against respondents but never attempted to join the Tribe to the action although it became a real party in interest no later than July 19, 2023 when it was identified as the project developer in the NOE. (*Ante*, Section III.B.) It is presumed that CBE was aware of the Tribe's role in the project as of July 19. (*Organizacion Comunidad de Alviso v. City of San Jose* (2021) 60 Cal.App.5th 783, 793 [a challenger to a CEQA project is responsible to stay informed of notices and revisions and it is presumed the identity of the developer is known when the Notice of Exemption is filed].)

CBE took no steps to name or serve the Tribe at any point in the proceedings below. No party disputes that it is too late to do so now, over 21 months after the filing of the NOE. CBE's only explanation for its failure to serve the Tribe is that the Tribe was not a real party in interest under section 21167.6.5. As already discussed, CBE's blanket insistence that the Tribe is not a real party in interest, or a relevant party in any way, to its challenge to the redevelopment of the parking lot into affordable housing is unavailing. (*Ante*, Section III.B.)

Because CBE did not timely name and serve the Tribe, sections 21167 and 21167.6.5 prevent CBE from joining the Tribe to the action now. (See *Save Berkeley*, *supra*, 70 Cal.App.5th at p. 726.)

As this serves as an independent basis for finding the Tribe cannot be joined, we do not reach the parties' arguments as to whether the Tribe cannot be joined on sovereign immunity grounds.

16

**V. The Trial Court Did Not Abuse Its Discretion in Finding the Tribe Is an Indispensable Party**

Having determined the Tribe is a necessary party that cannot be joined to CBE's petition, we turn to the ultimate issue on appeal: whether the trial court abused its discretion in finding dismissal of the petition was warranted on the basis that the Tribe was also an indispensable party. We find no abuse of discretion.

If a necessary party cannot be joined to an action, courts must apply an equitable balancing test, weighing four factors to determine "whether in equity and good conscience" that party is an indispensable party such that dismissal of the entire action is warranted. (Code Civ. Proc., § 389, subd. (b); *Save Berkeley*, *supra*, 70 Cal.App.5th at pp. 717, 721 [failure to name real parties in interest under section 21167.6.5 "*may* be grounds for dismissal depending on the factors set forth in section 389[, subd. ](b)"]; see § 21167.6.5, subd. (d).)

"The factors to be considered by the court include: (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; (4) whether the plaintiff or cross-complainant will have an adequate remedy if the action is dismissed for nonjoinder." (Code Civ. Proc., § 389, subd. (b).) No factor is determinative or inherently more important than another but potential prejudice to the unjoined party is of " 'critical importance.' " (*Save Berkeley*, *supra*, 70 Cal.App.5th at p. 721.) Indispensability is determined at the time the issue is raised or the time

17

relief is to be entered—not at the time the suit was filed. (*County of Imperial v. Superior Court* (2007) 152 Cal.App.4th 13, 36–37 (*County of Imperial*).)

While developers are often found to be indispensable parties in CEQA actions, they are not necessarily indispensable; rather, it remains a case-by-case discretionary determination by the trial court in which the court weighs practical and other considerations. (*Save Berkeley*, *supra*, 70 Cal.App.5th at pp. 721–722.)

In reviewing the trial court's determination that dismissal is warranted for failure to join an indispensable party, we bear in mind the burden is on CBE as the appellant to establish an abuse of discretion, "which is shown only if 'the trial court exceeded the bounds of reason, all of the circumstances before it being considered.' " (*Quantification Settlement Agreement Cases*, *supra*, 201 Cal.App.4th at p. 855.)

We now address each of the equitable factors in turn.

**A. Prejudice to the Tribe**

The first factor is the extent to which a judgment rendered in the absence of the Tribe would be prejudicial to the Tribe or respondents. (Code Civ. Proc., § 389, subd. (b).) The Tribe contends it would be prejudiced if CBE is successful in its petition, as it would prevent the Tribe from moving forward with plans to redevelop the property and, even if the project was not entirely stopped, jeopardize the work already done by the Tribe, such as pursuing funding. We agree.

The relief sought by CBE in the petition included a writ of mandate to "vacate and set aside" the project and an order requiring respondents to rescind their approval of the project. Despite CBE's assertion that the Tribe's development rights are not being challenged—on the same basis we have repeatedly rejected—it is apparent the Tribe would be hindered in its ability

18

to move forward as the developer of the project if CBE received the relief it sought in the petition. (See *Sierra Club, Inc. v. California Coastal Com.* (1979) 95 Cal.App.3d 495, 501 [a decision favorable to plaintiff, who sought relief setting aside developer's permit to undertake construction, would "[o]bviously . . . directly affect, and undoubtedly injure, [developer's] interests"].)

Further, contrary to CBE's assertion, the prejudice to the Tribe is not "speculative at best." Rather, as the Tribe noted in its declaration in support of its motion to dismiss and on appeal, it invested significant time and resources toward the planning and development of the affordable housing project, such as entering into contracts to acquire funding. A judgment "vacat[ing] and set[ting] aside" the underlying approvals for the development project the Tribe sought out in the RFP process, thereby creating obstacles before the Tribe could move forward with the development, is not speculative. (See *Beresford Neighborhood Assn. v. City of San Mateo* (1989) 207 Cal.App.3d 1180, 1189 [challenge to approvals required for development would prejudice developer who undertook efforts to secure approvals].)

Additionally, we are not persuaded by CBE's reliance on *People ex rel. Lungren v. Community Redevelopment Agency* (1997) 56 Cal.App.4th 868 (*Lungren*). In that case, the public agency entered into a contract to transfer property to the Agua Caliente Band of Cahuilla Indians to build and operate a casino. (*Id.* at p. 870.) The California Attorney General filed a complaint challenging the project, in part, on the basis that it would " 'surrender, impair, or embarrass the State's exclusive, sovereign civil or criminal jurisdiction over [the] land, including the State's jurisdiction to prohibit or regulate gambling on such land.' " (*Id.* at p. 873.) The appellate court concluded that, although the Agua Caliente Band of Cahuilla Indians was a

19

necessary party that could not be joined on sovereign immunity grounds, the case warranted application of a " ' "public rights" ' "exception to the traditional joinder rules because finding it to also be an indispensable party would "plac[e] [the property] beyond the reach of the state's police power." (*Id.* at pp. 870, 879, 881–882.)

Here, by contrast, CBE points to nothing in the record showing the affordable housing development would be beyond the reach of the state's police power. (Cf. *Lungren, supra,* 56 Cal.App.4th at p. 882.) Rather, the MOU between the Tribe and respondents expressly requires the Tribe and any third-party contractors to "comply fully with all applicable local, state and federal rules, laws, regulations and ordinances pertaining to performance" of its responsibilities under the agreement. Importantly, we note the Tribe concedes as much in its briefing, stating the affordable housing development "would remain subject to state and local laws and jurisdiction." And, unlike the situation in *Lungren*, the development of affordable housing does not implicate the " 'the State's jurisdiction to prohibit or regulate gambling.' " (Cf. *id.* at p. 873.) Therefore, we decline to find the exception laid out in *Lungren* applies to these circumstances to outweigh the prejudice to the Tribe under the first factor.

We also note that the prejudice that would be felt by the Tribe was only amplified by CBE's failure to diligently pursue its litigation objective so as to remove the uncertainty created by the litigation. For example, rather than seek a temporary stay or other emergency relief to prevent progress on the site of the parking lot, the record reflects no filings by CBE between the May petition and the motion for a preliminary injunction filed seven months later, in December. This inaction is stark given the clear and public progress—

20

including the notices related to the award of development rights to the Tribe in July—that occurred in the intervening months.

Accordingly, we find the first factor weighs heavily in favor of dismissal.

## B. Lessening or Avoiding Prejudice

The Tribe argues the second factor—the extent to which prejudice can be lessened or avoided through the shaping of relief—also weighs in favor of dismissal. (Code Civ. Proc., § 389, subd. (b).) It contends removal of the parking from the parking lot was a prerequisite to the development of affordable housing, so any judgment in CBE's favor would necessarily affect the Tribe.

CBE does not attempt to argue there is some way to avoid or lessen the prejudice to the Tribe. Rather, it reiterates its assertions that judgment in its favor would have no meaningful effect on the Tribe, and that any prejudice is outweighed by the public rights exception applied in *Lungren*. We reject CBE's arguments for the same reasons previously discussed and find this factor also weighs in favor of dismissal. (See *Sierra Club, Inc. v. California Coastal Com.*, *supra*, 95 Cal.App.3d at p. 501; cf. *Lungren*, *supra*, 56 Cal.App.4th at pp. 873, 882.)

## C. Adequacy of Judgment Rendered in the Tribe's Absence

The third factor concerns whether a judgment rendered in the Tribe's absence would be adequate. (Code Civ. Proc., § 389, subd. (b).) "The test for determining the ability to protect an absent party's interest is whether existing and absent parties' interests are sufficiently aligned that the absent party's rights necessarily will not be affected or impaired by the judgment or proceeding." (*County of Imperial*, *supra*, 152 Cal.App.4th at p. 38.)

21

We find this factor weighs in favor of dismissal as the Tribe's "role in developing, building, managing, and operating the project create[s] a distinct economic interest" from respondents' interest in adding affordable housing. (Cf. *Save Berkeley*, *supra*, 70 Cal.App.5th at p. 722 [finding developer's interests sufficiently aligned with agency's interests where agency planned to manage and operate portion of development and regain ownership of project after the project debt was repaid].)

**D. Remedy if Action Were Dismissed**

The final factor is whether CBE would have an adequate remedy if the action were dismissed. (Code Civ. Proc., § 389, subd. (b).)

Respondents contend CBE would have other pathways to relief, pointing to "active litigation" and an "option to challenge ongoing approvals." CBE avers it would be without adequate remedy without this case as the ongoing litigation referenced by respondents concerns other actions that do not necessarily involve the parking lot at issue in the petition.

Here, the record does not contain any information regarding any ongoing litigation by CBE related to the redevelopment of the parking lot. To the extent CBE will be limited in its ability to challenge the initial approvals related to the development on the site of the parking lot, CBE's remedy may indeed be restricted by a dismissal. However, we note that the lack of an adequate remedy to challenge those approvals is a direct result of CBE's own failure to join the Tribe as a necessary party within the limitations period, which was entirely within its control. Further, the dismissal of CBE's petition was without prejudice, and it is not readily apparent that CBE will necessarily be prevented from challenging future approvals related to the redevelopment. Therefore, we find the fourth factor to be neutral.

22

Even so, given that the other three factors weigh in favor of dismissal—including and especially the prejudice to the Tribe, which " 'is of critical importance' " (*Save Berkeley*, *supra*, 70 Cal.App.5th at p. 721)—we cannot say on this record that CBE has met its burden to show the trial court abused its discretion in weighing the factors under Code of Civil Procedure section 389, subdivision (b) to find the petition could not proceed absent the Tribe. (See, e.g., *County of Imperial*, *supra*, 152 Cal.App.4th at p. 35.) Accordingly, we shall affirm.

## DISPOSITION

The order dismissing the petition for writ of mandate and complaint for declaratory and injunctive relief is affirmed. Respondents and the Tribe are awarded costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

PETROU, J.


WE CONCUR:


TUCHER, P. J.
RODRIGUEZ, J.


Citizens for a Better Eureka v. City of Eureka et al. (A170214)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CITIZENS FOR A BETTER EUREKA,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CITY OF EUREKA et al.,<br><br>    Defendants and Respondents;<br><br>WIYOT TRIBE,<br><br>    Real Party in Interest. | A170214<br><br>(Humboldt County<br>Super. Ct. No. CV2300712) |

**ORDER CERTIFYING OPINION FOR PUBLICATION**
**[NO CHANGE IN JUDGMENT]**

**THE COURT\*:**

The opinion filed on May 14, 2025, was not certified for publication in the Official Reports. For good cause appearing, pursuant to California Rules of Court, rule 8.1105(b) and (c), the opinion is certified for publication. Accordingly, the City of Eureka's request for publication is GRANTED.

The order effects no change in the judgment.


Dated: __June 11, 2025__                    _____TUCHER, PJ_____, P. J.

---

\* Tucher, P. J., Petrou, J., and Rodríguez, J. participated in the decision.

1

Superior Court of Humboldt County, Hon. John T. Feeney.

Everview, Bradley B. Johnson and James I. Anderson, for Petitioner and Appellant.

Autumn E. Luna, City Attorney, Robert N. Black, Assistant City Attorney; Greg Holtz Law and Gregory M. Holtz, for Defendants and Respondents.

Berkey Williams, Siena Kalina and Curtis Berkey, for Real Party in Interest.